IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>$87,875.00 IN UNITED STATES CURRENCY, )<br>)<br>Defendant. ) | Civil Action No. 2:23-cv-1361 |

VERIFIED COMPLAINT FOR FORFEITURE

AND NOW comes the United States of America, by and through its counsel, Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, and Jill L. Locnikar, Assistant United States Attorney for the Western District, and respectfully represents as follows:

1. Plaintiff, the United States of America, brings this civil action *in rem* for forfeiture to the United States of $87,875.00 in United States currency, delineated by asset identification number 23-DEA-699917 (the "Defendant Currency"), pursuant to 21 U.S.C. §881(a)(6).

2. Jurisdiction is predicated upon 28 U.S.C. § 1345 and § 1355(a). Venue is proper under 28 U.S.C. § 1395 and § 1355(b).

3. On February 8, 2023, law enforcement identified two males -- later identified as Darrin David Packnit ("Packnit"), of Turlock, CA, and Lucas Charles Woolman ("Woolman"), of Modesto, CA -- walking through the primary TSA screening checkpoint at Pittsburgh International Airport carrying bulk U.S. currency. Packnit was carrying the Defendant Currency in his luggage.

4.      Law enforcement seized the Defendant Currency from Packnit. The Defendant Currency has remained in the Western District of Pennsylvania in the custody of the United States Marshals Service.

5.      Subsequent to the seizure, Packnit filed a claim to the Defendant Currency as part of the administrative proceedings. As a result, the United States has instituted this civil forfeiture action against the Defendant Currency.

## FACTUAL BANCKGROUND

6.      Packnit reported to TSA screening checkpoint personnel that he was carrying $68,000.00 in United States currency.

7.      Packnit agreed to participate in an interview with law enforcement. During the interview, Packnit made numerous evasive and inconsistent statements regarding the purpose of his travel and the source of the Defendant Currency as described below.

8.      Packnit told law enforcement that he and Woolman traveled together from San Francisco, CA to Pittsburgh, PA with the intention of purchasing classic cars. Packnit was looking for a 1972 Lincoln with "suicide doors". He said that he and Woolman spent the night at the Hyatt Hotel, attached to the Pittsburgh International Airport, and they never left the building. While he indicated that he never left the building, he told law enforcement that he looked at the 1972 Lincoln in "the parking lot."

9.      Woolman was also carrying bulk currency in the amount of $43,000 in United States currency in his luggage and provided law enforcement with an equally questionable explanation as to its source.

10.     Packnit told law enforcement that he decided not to purchase the vehicle because the mileage was not right for him. When law enforcement asked him for the color of the 1972

Lincoln, he paused for several seconds before providing the color gray. He then paused again and shrugged his shoulders and remarked that the 1972 Lincoln was "grayish".

11.     Packnit was unable to provide the name of the person who was selling the vehicle and was unable to provide the seller's contact information. He only mentioned that he and the seller met in Las Vegas. Packnit indicated that the seller had a flip phone, and he did not think he sent text messages. Packnit told investigators that he did not have the seller's contact information in his phone because he deletes his call log every day. While Packnit told security check point personnel that he was carrying $68,000.00, he told law enforcement that he had $60,000.00 and then changed the amount to $65,000.00.

12.     Packnit told law enforcement that the source of the Defendant Currency was from his purchases and sales of real estate and classic cars. He mentioned that he purchases houses "all over" and presented Yuman, AZ as an example of a place where he recently purchased real estate.

13.     Knowing that Packnit and Woolman traveled together and knowing that Packnit had knowledge that Woolman was looking to buy a Range Rover, law enforcement asked Packnit if Woolman made the purchase. Packnit told investigators that he was not even aware that Woolman looked at the Range Rover.

14.     During the interview, Packnit was looking through the compartments of his luggage and told law enforcement that he was looking for a set of keys. Law enforcement noticed that Packnit removed a blue post-it note and asked what it was. Packnit said it was garbage. When asked to look at it, law enforcement noted that the post-it note had a name written on it. Two of the eight rubber-banded bundles of U.S. currency within Packnit's luggage had the same type of blue post-it note with handwritten notations "Troy, IL" and "-9K Jermy". Law

enforcement considers this to be a narcotic traffickers' aid that is used for keeping track of currency amounts received from each individual customer.

15.     The Defendant currency was bundled according to the following denominations: eighteen (18) $100 bills; sixteen (16) $50 bills; three thousand seven hundred sixty-three (3,763) $20 bills; one (1) $10 bill; and five (5) $1 bills. The respective currency denominations and the manner in which the Defendant Currency was bundled are indicative of how drug-money couriers transport illegal drug proceeds.

16.     The Defendant Currency was later counted, and the total amount was verified to be $87, 875.00 in United States currency.

17.     The Defendant Currency was later scanned by a certified narcotics-detecting canine that alerted to the presence of a controlled substance.

18.     Packnit's criminal history includes a 1999 federal conviction in San Diego for possession with intent to distribute marijuana, among other convictions.

19.     On April 25, 2019, investigators from the Stanislaus County Auto Theft Task Force executed a State Search warrant at Packnit's Oakdale, CA residence. Packnit had rented a generator and he did not return it to the rental company. The rental company reported it stolen. Upon executing the State Search warrant, investigators discovered a sophisticated THC extraction lab inside a barn at the residence. Drug Enforcement Administration agents investigated and found approximately 2,325 kilograms of marijuana and approximately 75 liters of hash oil.

20.     By reason of the foregoing, and under the provisions of 21 U.S.C. § 881(a)(6), the Defendant Currency is forfeitable to the United States.

WHEREFORE, the United States of America respectfully requests that process of warrant *in rem* issue for the arrest of the Defendant Currency; that Judgment of Forfeiture be entered in favor of the United States for the Defendant Currency; and that the United States be granted such relief as this Honorable Court may deem just and proper, together with the costs and disbursements of this action.

ERIC G. OLSHAN
United States Attorney

*/s/ Jill L. Locnikar*
JILL L. LOCNIKAR
Assistant U.S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
412-894-7429 (tel)
412-644-6995 (fax)
jill.locnikar@usdoj.gov
PA ID No. 85892 (AFF)

VERIFICATION

I am a Task Force Officer with Drug Enforcement Administration, Department of Justice, and the case agent assigned to this case.

I have read the contents of the foregoing complaint for forfeiture and the statements contained therein are true and correct to the best of my knowledge and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 28 day of July, 2023.

TFO /s/ David Williams
DAVID WILLIAMS, Task Force Officer
Drug Enforcement Administration